IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Colleen M. O'Toole, et al.,

        Plaintiffs,

v.

Maureen O'Connor, et al.,

        Defendants.

Case No: 2:15-cv-1446

Judge Graham

Magistrate Judge Deavers

<u>Opinion and Order</u>

This matter is before the court on a motion for preliminary injunction filed by plaintiffs Colleen M. O'Toole and Friends to Elect Colleen M. O'Toole. Plaintiffs request that the court enjoin enforcement of Rule 4.4(E) of the Ohio Code of Judicial Conduct, which imposes a temporal restriction on the ability of campaign committees of candidates for judicial office to solicit and receive contributions. Plaintiffs allege that Rule 4.4(E) violates the committee's right to freedom of speech under the First Amendment to the United States Constitution and that it constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment.

The court held a hearing on the motion for a preliminary injunction on May 26, 2015. For the reasons set forth below, the motion for preliminary injunctive relief is denied.

**I.     Background**

Plaintiff Colleen M. O'Toole currently presides as a judge on Ohio's Eleventh District Court of Appeals. She has publicly announced her candidacy for election to the Ohio Supreme Court in 2016, and she will seek the Republican Party's nomination at the March 2016 primary election for a seat on the Ohio Supreme Court.

Plaintiff Friends to Elect Colleen M. O'Toole is a campaign committee that has been registered with the Ohio Secretary of State to receive contributions and make expenditures on behalf of Judge O'Toole in her prior and future campaigns for judicial office.

Defendants Chief Justice Maureen O'Connor, Disciplinary Counsel Scott J. Drexel and Secretary to the Board of Commissioners on Grievances and Discipline Richard A. Dove are alleged in the complaint to have responsibilities regarding the adoption, promulgation and enforcement of the Ohio Code of Judicial Conduct.

1

The complaint challenges several provisions of the Ohio Code of Judicial Conduct, namely Rules 4.3(C), 4.3(D), 4.4(A) and 4.4(E). The challenged provisions of the Code relate to a "judicial candidate," a term defined as "a person who has made a public announcement of candidacy for judicial office, declared or filed as a candidate for judicial office with the election authority, or authorized the solicitation or receipt of contributions or support for judicial office." Ohio Code of Judicial Conduct, Rule 4.6(F). The complaint alleges, and defendants do not dispute, that Judge O'Toole is a judicial candidate.

Rule 4.4(E) alone is at issue in the motion for a preliminary injunction. Under Rule 4.4(E):

> The campaign committee of a judicial candidate may begin soliciting and receiving contributions no earlier than one hundred twenty days before the first Tuesday after the first Monday in May of the year in which the general election is held. If the general election is held in 2012 or any fourth year thereafter, the campaign committee of a judicial candidate may begin soliciting and receiving contributions no earlier than one hundred twenty days before the first Tuesday after the first Monday in March of the year in which the general election is held. Except as provided in divisions (F) and (G) of this rule, the solicitation and receipt of contributions may continue until one hundred twenty days after the general election.

The complaint alleges that for candidates like Judge O'Toole wishing to run for a seat on the Ohio Supreme Court in the November 2016 election, Rule 4.4(E) prevents the judicial candidate's campaign committee from soliciting and receiving contributions until November 9, 2015.

II.     **Standard of Review**

Preliminary injunctions are available under Rule 65(a) of the Federal Rules of Civil Procedure. They are extraordinary remedies governed by the following considerations: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent an injunction, (3) whether issuance of the injunction would cause substantial harm to others, and (4) whether the public interest would be served by granting the requested injunction. Ohio Republican Party v. Brunner, 543 F.3d 357, 361 (6th Cir. 2008); see also Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).

"Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." Gonzales v. Nat'l Bd. of Med. Examiners, 225 F.3d 620, 625 (6th Cir. 2000); accord Jolivette v. Husted, 694 F.3d 760, 765 (6th Cir. 2012). Likelihood of success on the merits is often the most important factor in evaluating a motion for preliminary injunctive relief. See Jones v. Caruso, 569 F.3d 258, 277 (6th Cir. 2009).

### III.     Likelihood of Success on the Merits

#### A.     A Facial Challenge

The complaint alleges that Rule 4.4(E) infringes the plaintiff campaign committee's right to free speech because it imposes a limitation on the committee's ability to solicit and receive contributions.  Although plaintiffs do not state whether they are making an as-applied challenge or a facial challenge, or both, the court will construe their claim as a facial challenge for purposes of the present motion because the complaint does not allege that defendants have taken any action to enforce Rule 4.4(E) against plaintiffs and because the motion for injunctive relief seeks a broad injunction against the enforcement of Rule 4.4(E) which would, in plaintiffs' words, extend to the benefit of "other judicial candidates."  Doc. 2 at 30.

"Where a plaintiff makes a facial challenge under the First Amendment to a statute's constitutionality, the 'facial challenge' is an 'overbreadth challenge.'"  Speet v. Schuette, 726 F.3d 867, 872 (6th Cir. 2013) (quoting Connection Distrib. Co. v. Holder, 557 F.3d 321, 335 (6th Cir. 2009) (en banc)).  Plaintiff bears the burden "to demonstrate that a 'substantial number of instances exist in which the law cannot be applied constitutionally.'"  Glenn v. Holder, 690 F.3d 417, 422 (6th Cir. 2012) (quoting Richland Bookmart, Inc. v. Knox Cnty., 555 F.3d 512, 532 (6th Cir. 2009)).

#### B.     The Platt Suit in this Court

The current dispute is not the first one brought in this court to challenge the constitutionality of Rule 4.4(E).  In Platt v. Bd. of Comm'rs on Grievances & Discipline of the Ohio Supreme Court, No. 1:13-cv-435 (S.D. Ohio) (Barrett, J.), an attorney, who was not a sitting member of the judiciary, and his campaign committee moved to enjoin enforcement of Rule 4.4(E), as well as other provisions of the Ohio Code of Judicial Conduct.  The court denied the motion for a preliminary injunction.  As to Rule 4.4(E), the court applied the standard of Buckley v. Valeo, 424 U.S. 1, 25 (1976), that the limitation on speech must be "closely drawn" to match a "sufficiently important" state interest.  Applying the "closely drawn" standard, the court found that Ohio has a "compelling interest in upholding the appearance and reality of impartiality of judicial candidates," whether or not the candidate is an incumbent.  Jan 6, 2014 Opinion and Order at 11.  The court found that Rule 4.4(E) was closely drawn to serve that interest because the temporal limit "reduces any erosion in public perception of the independence of the judiciary that a never-ending solicitation of money could cause" and because the Code still allowed the judicial candidate to contribute and expend his own funds and engage in various campaign activities.  Id.

On appeal the Sixth Circuit affirmed the court's denial of preliminary injunctive relief.  See Platt v. Board of Comm'rs on Grievances & Discipline of the Ohio Supreme Court, 769 F.3d 447 (6th Cir. 2014).  The primary focus of the Sixth Circuit's opinion was an issue of standing, as plaintiff had not filed the paperwork necessary to appear as a candidate on the November 2014 ballot.  After finding that the standing requirement was satisfied, the court held that "[i]ndependently applying the First and Fourteenth Amendments, we are not persuaded that the district court erred in its success-on-the-merits determination."  Id. at 454.  The court did not provide much further analysis, and its discussion thereafter appeared to apply to the other Code provisions at issue in the case, and not to Rule 4.4(E).  See id. (citing cases concerning restrictions on direct solicitation by judicial candidates and restrictions on statements of party affiliation and candidate endorsement).

The parties to the present suit disagree on the precedential effect of the Platt decision on this case.  In this court's view, the Sixth Circuit's decision did not provide reasoning or analysis directly on the issue raised here; nonetheless, the court in a published opinion affirmed the district court's denial of a preliminary injunction against Rule 4.4(E), among other Code provisions.  In that regard, the outcome of Platt favors defendants.

C. The Supreme Court's Decision in Williams-Yulee

Plaintiffs argue that the landscape has changed since Platt with the United States Supreme Court's decision in Willliams-Yulee v. Florida Bar, __ U.S. __, 135 S.Ct. 1656 (2015).  In Williams-Yulee, the Court rejected a First Amendment challenge to Canon 7(C)(1) of the Florida Code of Judicial Conduct, which prohibits a judicial candidate from directly soliciting campaign contributions.  Chief Justice Roberts delivered the opinion of the Court, with four Justices dissenting.

Of particular importance to the parties in this case is the level of scrutiny applied by the Justices in Willliams-Yulee.  In a portion of his opinion that did not draw a majority of the Court, Chief Justice Roberts determined that a prohibition against solicitations for campaign contributions should be subject to strict scrutiny.  He found that the "closely drawn" standard from Buckley was a "poor fit" for examining a solicitation restriction because the contribution limits at issue in Buckley implicated the contributor's freedom of association, whereas a solicitation restriction implicates the speaker's freedom of speech.  Willliams-Yulee, 135 S.Ct. at 1665.  "The Bar's call to import the 'closely drawn' test from the contribution limit context into a case about solicitation therefore has

4

little avail." Id. "A State may restrict the speech of a judicial candidate only if the restriction is narrowly tailored to serve a compelling interest." Id.

Justices Breyer and Ginsburg wrote separate concurrences to state their respective views of the appropriate level of scrutiny. Justice Breyer briefly wrote that "tiers of scrutiny" are not "tests to be mechanically applied." Willliams-Yulee, 135 S.Ct. at 1673, 1673 (Breyer, J., concurring). Justice Ginsberg clarified that she "would not apply exacting scrutiny to a State's endeavor sensibly to 'differentiate elections for political offices . . ., from elections designed to select those whose office it is to administer justice without respect to persons.'" Id., 135 S.Ct. at 1673, 1673 (Ginsburg, J., concurring) (quoting Republican Party of Minnesota v. White, 536 U.S. 765, 805 (2002)). In further comments in which Justice Breyer joined, Justice Ginsburg stated that "States should not be put to the polar choices of either equating judicial elections to political elections, or else abandoning public participation in the selection of judges altogether. Instead, States should have leeway to 'balance the constitutional interests in judicial integrity and free expression within the unique setting of an elected judiciary.'" Id. at 1675 (quoting White, 536 U.S. at 821 (Ginsburg, J., dissenting)).

The dissenting Justices in Willliams-Yulee believed that strict scrutiny should be applied, and they found that Canon 7(C)(1) could not survive strict scrutiny. Willliams-Yulee, 135 S.Ct. at 1676 (Scalia, J., dissenting); id. at 1682 (Kennedy, J., dissenting); id. at 1685 (Alito, J., dissenting). The dissenters believed that the Chief Justice and the plurality of the Court, which purported to apply strict scrutiny, had in fact applied a relaxed level of scrutiny. Id. at 1677 ("[The Court] purports to reach this destination by applying strict scrutiny, but it would be more accurate to say that it does so by applying the appearance of strict scrutiny.") (Scalia, J., dissenting); Id. at 1685 ("The Court's evisceration of that judicial standard now risks long-term harm to what was once the Court's own preferred First Amendment test.") (Kennedy, J., dissenting).

### D. Rule 4.4(E)'s Restriction on Receiving Contributions

One conclusion that can be safely drawn from Willliams-Yulee is that none of the Justices would apply Buckley's "closely drawn" standard to a restriction on campaign solicitations. But it must not be overlooked that Rule 4.4(E)'s time restriction has two applications: a limit on *soliciting* contributions and a limit on *receiving* contributions. See Rule 4.4(E) ("The campaign committee of a judicial candidate may begin soliciting and receiving contributions no earlier than one hundred twenty days . . . ."). In terms of campaign practicalities, the candidate's committee likely would gladly receive a contribution the moment a willing donor is being solicited. See Siefert v. Alexander, 608 F.3d 974, 988 (7th Cir. 2010) ("At heart, the solicitation ban is a campaign finance regulation.").

5

Nonetheless, the distinction matters for purposes of legal analysis because Williams-Yulee and Buckley instruct that, in the realm of campaign financing, a limitation on speech and a limitation on political association are subject to different levels of scrutiny.

With respect to Rule 4.4(E)'s restriction on receiving contributions, the court is not persuaded at this early stage that plaintiffs have demonstrated a strong likelihood of success on the merits. Williams-Yulee did not change the applicable standard of scrutiny. A campaign committee's ability to receive contributions from persons who support its candidate is an associational freedom. That makes the standard of Buckley still a good fit. See Willliams-Yulee, 135 S.Ct. at 1665; see also Gable v. Patton, 142 F.3d 940, 950 (6th Cir. 1998) (applying Buckley to a time restriction on gubernatorial candidates from receiving contributions); Thalheimer v. City of San Diego, 645 F.3d 1109, 1122 (9th Cir. 2011) (applying Buckley to a time restriction on political candidates and their committees from receiving contributions).

Plaintiffs appear to argue that a time restriction on their ability to receive contributions translates into a restriction on their free speech rights because campaign communications often require the expenditure of money. However, the present motion makes a facial challenge to Rule 4.4(E) alone, and on its face Rule 4.4(E) does not limit the amount of contributions plaintiffs may receive, nor does it limit the amount of plaintiffs' campaign expenditures. It simply establishes a time frame during which the campaign committee may receive contributions.

Under Buckley, Rule 4.4(E)'s restriction on receiving contributions must be closely drawn to match a sufficiently important interest. Buckley, 424 U.S. at 25. Defendants offer judicial impartiality and the appearance of judicial impartiality as important state interests. Williams-Yulee is the most recent in a long line of cases to conclude that a state's interests in maintaining the integrity of its judiciary and in preserving public confidence in judicial impartiality are not only important interests but are compelling interests "of the highest order." Willliams-Yulee, 135 S.Ct. at 1666 (citing cases).

The court finds that Rule 4.4(E) is closely drawn to serve the state's interests, particularly the interest in protecting the public's perception of judicial integrity. The Rule ensures that contributions to a judicial candidate's committee are made proximate in time to the election cycle. Contributions made remotely in time from the election are more apt to create the suspicion of partiality, of the existence of a connection between the contributor and a matter on the judge's docket. As the Ninth Circuit stated in upholding a time restriction on contributions to candidates for the city of San Diego's political offices, "contributions made near an election are clearer

6

expressions of political speech, whereas off-year contributions are more likely linked to business the donor has before the city, thus creating the appearance of quid pro quo 'corruption by the sale of influence.'"  Thalheimer, 645 F.3d at 1121.  Thus, the court agrees with the district court's conclusion in Platt that Rule 4.4(E) is closely drawn and reduces any erosion in the appearance of impartiality that a non-stop contribution period would cause.  See also Gable, 142 F.3d at 951 (upholding a time limitation on receiving contributions – "Candidates will be forced to rearrange their fundraising by concentrating it in the period before the 28–Day Window begins.  That is not a trivial restriction, but we read Buckley to say that such a restriction is justified by Kentucky's interest in combating corruption").

### E. Rule 4.4(E)'s Restriction on Soliciting Contributions

It would seem that another conclusion one could reasonably draw from Willliams-Yulee is that a majority of the Court would apply strict scrutiny to a restriction on a judicial candidate's free speech rights – albeit Justice Breyer's concurrence and the dissenting Justices would suggest that the plurality's version of strict scrutiny is a relaxed one.

Defendants contend that Rule 4.4(E)'s restriction on solicitation should be treated as a "time, place, and manner" restriction subject to less rigorous review.  See Planet Aid v. City of St. Johns, 782 F.3d 318, 326 (6th Cir. 2015) ("[G]overnment action that merely regulates the time, place, and manner of protected speech, that is, 'regulations that are unrelated to the content of speech[,] are subject to an intermediate level of scrutiny.'") (quoting Turner Broad. Sys., Inc. v. F.C.C., 512 U.S. 622, 642 (1994)).  The court agrees that Rule 4.4(E) is a time restriction, but not in the sense of it being a regulation unrelated to the content of speech, such as a regulation allowing public speech, no matter its content, at a public park only during daylight hours.  See id. (explaining that a restriction is content-based if it "treats speech differently based on the viewpoint or subject matter of the speech, on the words the speech contains, or on the facts it conveys") (internal quotation marks omitted).  Plaintiffs' speech is being regulated because of its subject matter: solicitations for campaign contributions to a judicial candidate.  Thus, the court finds that strict scrutiny review applies to the solicitation restriction of Rule 4.4(E).  See Carey v. Wolnitzek, 614 F.3d 189, 199 (6th Cir. 2010) (applying strict scrutiny in examining certain canons of Kentucky's Code of Judicial Conduct – "The canons instead are of a piece with the kinds of speech regulation – telling candidates what they can and cannot say before an election – that the courts have scrutinized most rigorously.").

7

A content-based restriction on speech will survive strict scrutiny only if it is narrowly tailored to serve a compelling interest. Eu v. San Francisco County Democratic Cent. Comm., 489 U.S. 214, 222 (1989). As noted above, Willliams-Yulee leaves no doubt that the state's interests in the integrity and appearance of impartiality of its judiciary are compelling. See also Willliams-Yulee, 135 S.Ct. at 1676-77 (Scalia, J., dissenting) ("I do not for a moment question the Court's conclusion that States have different compelling interests when regulating judicial elections than when regulating political ones.").

The parties dispute the evidentiary burden required of defendants to establish that Rule 4.4(E) is narrowly tailored to serve the state's interests. Plaintiffs contend that defendants must submit evidentiary support for the proposition that the restriction advances the state's interests in judicial integrity. Defendants counter that this is a matter that eludes proof. It is on this particular issue that the Willliams-Yulee dissenters accused the Court of relaxing the strict scrutiny standard. See Willliams-Yulee, 135 S.Ct. at 1678-79 (Scalia, J., dissenting). For purposes of the present motion and the extraordinary relief for which plaintiffs ask, the court agrees with defendants that an evidentiary showing on their part is not necessary. The Court in Willliams-Yulee found:

> The Florida Supreme Court adopted Canon 7C(1) to promote the State's interests in "protecting the integrity of the judiciary" and "maintaining the public's confidence in an impartial judiciary." . . . The way the Canon advances those interests is intuitive: Judges, charged with exercising strict neutrality and independence, cannot supplicate campaign donors without diminishing public confidence in judicial integrity.
>
> . . .
>
> The concept of public confidence in judicial integrity does not easily reduce to precise definition, nor does it lend itself to proof by documentary record. But no one denies that it is genuine and compelling.

Willliams-Yulee, 135 S.Ct. at 1666-67.

The court finds that plaintiffs have failed to demonstrate a strong likelihood of success on the merits that they can show that Rule 4.4(E) is not narrowly tailored. A flat ban on personal solicitation of campaign funds by judicial candidates was upheld in Willliams-Yulee. Rule 4.4(E) permits a solicitation period of 16 months in connection with the 2016 election for seats on the Ohio Supreme Court. See Thalheimer, 645 F.3d at 1122 (noting that a temporal ban is a "marginal restriction" in comparison to other types of limitations on campaign activities).

Plaintiffs emphasize that it is the campaign committee, and not the judicial candidate herself, which is subject to the restraint of Rule 4.4(E). According to plaintiffs, the rationale for why a

8

limitation on solicitations by candidates would be narrowly tailored does not extend to committees. The court is not presently persuaded. Under Ohio law, a "campaign committee" "means a candidate or a combination of two or more persons authorized by a candidate" to receive contributions and make expenditures. O.R.C. § 3517.01(C)(1). The committee's name must include the name of the campaign's candidate. O.R.C. § 3517.10(D). In other words, the committee is tethered to the candidate by name and serves the candidate by receiving and spending funds on her behalf. See Ohio Code of Judicial Conduct, Rule 4.4(A) ("A judicial candidate may establish a campaign committee to manage and conduct a campaign for the candidate."). That committees for judicial candidates are granted the right of direct solicitation, which the candidate herself does not have, perhaps only underscores that the committees function like an alter ego of the candidate and raises a concern that, absent the temporal limitation, the committee could exercise the off-election-cycle coercion in which the candidate herself may not engage.

As explained above, Rule 4.4(E)'s temporal limitation serves the state's interest in maintaining the integrity of the judiciary by forcing fundraising to occur proximate to the election cycle. And as stated in Platt, judicial candidates are able to contribute and spend their own funds, marshal volunteers and supporters and "engage in campaign activities other than soliciting funds, such as attending political functions, marching in parades and making speeches about their candidacy." Jan 6, 2014 Opinion and Order at 11.

To some extent the reasons why the state selected a 16-month period – as opposed to a longer or shorter one – do elude proof. But case law cautions that courts are not in a position second-guess what the exact time period should be. See Thalheimer, 645 F.3d at 1123 ("[W]e cannot determine with any degree of exactitude the precise restriction necessary to carry out the statute's legitimate objectives, and in practice, the legislature is better equipped to make such empirical judgments, as legislators have particular expertise in matters related to the costs and nature of running for office. Thus ordinarily we have deferred to the legislature's determination of such matters.") (internal quotation marks omitted).

Plaintiffs argue that the interplay between Rule 4.4(E) and O.R.C. § 3513.05, concerning declarations of candidacy, has the effect of impermissibly keeping candidates off the ballot. Under § 3513.05, candidates have 90 days prior to a primary election to file a declaration of candidacy and a petition containing the signatures of at least one thousand qualified electors. Plaintiffs argue that these two regulations create a mere 30-day window in which the committee may raise funds before the petition must be submitted. Again at this early stage the court finds that plaintiffs have not

9

demonstrated a strong likelihood of success on the merits. The judicial candidate may contribute and expend her own funds 90 days prior to the 30-day window. See Ohio Code of Judicial Conduct, Rule 4.4(H). Moreover, an incumbent, such as plaintiff, may retain and spend funds from a prior election. See Board of Comm'rs on Grievances & Discipline, Advisory Op. No. 97-6. The court is not persuaded that plaintiffs are likely to support their facial challenge by demonstrating that the interplay between Rule 4.4(E) and O.R.C. § 3513.05 keeps judicial candidates off the ballot in a "substantial number of instances." Glenn, 690 F.3d at 422.

F. **Equal Protection**

Plaintiffs assert two separate equal protection theories. First, they argue that Rule 4.4(E) works a disadvantage to campaigns with little or no retained funds from a prior election cycle. Second, they argue that other political actors, such as political parties and political action committees, are not subject to time restrictions on fundraising. The court finds that plaintiff has not demonstrated a strong likelihood of success with respect to either theory.

As to plaintiffs' first theory, Rule 4.4(E) imposes an equal time restraint on all judicial campaign committees. Under the Rule, plaintiffs have the same opportunity as other judicial candidates have to solicit and raise funds. To the extent other judicial campaigns will enter the 2016 race with greater retained funds than plaintiffs will, the disparity is a result of past fundraising success and spending choices made by the campaigns, and is not caused by Rule 4.4(E). The disparity to which plaintiffs point – the one concerning retained funds – is a creation of Advisory Opinion Number 97-6 of the Ohio Supreme Court's Board of Commissioners on Grievances and Discipline, allowing incumbents to retain and spend funds from a prior election. A challenge to Advisory Opinion Number 97-6 is not presented in the complaint.

As to plaintiff's second theory, the parties disagree about the applicable legal analysis. Defendants argue that judicial campaign committees are not similarly situated to other political actors (in that the later are often expressly partisan and support multiple candidates and causes) and that plaintiffs are not likely to show any discriminatory animus towards judicial candidates; thus, defendants argue that there need only be a rational basis for Rule 4.4(E)'s time restraint on a judicial campaign committee's fundraising abilities. See Sadie v. City of Cleveland, 718 F.3d 596, 601-02 (6th Cir. 2013) (holding that the Fourteenth Amendment protects against intentional and arbitrary discrimination and, where no suspect class is implicated, the challenged law or policy need only be supported by a rational basis).

Plaintiffs, in their reply brief, clarify that they are invoking the branch of Equal Protection law relating to a fundamental right and, as such, rational basis review is not appropriate.  See <u>Heller v. Doe</u>, 509 U.S. 312, 319-20 (1993) ("[A] classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.").  The fundamental right at issue, plaintiffs argue, is their freedom of speech under the First Amendment and thus Rule 4.4(E) must undergo strict scrutiny.  But this argument simply returns the plaintiffs to the essence of their First Amendment claim: that Rule 4.4(E) is not narrowly tailored to serve a compelling state interest, that the rationale for imposing a time restraint on fundraising solicitations by judicial campaign committees does not pass strict scrutiny review.  For the same reasons as explained regarding plaintiffs' First Amendment claim, the court finds that plaintiffs have not demonstrated a strong likelihood of success as to their Equal Protection claim.

**IV.    Other Preliminary Injunction Factors**

The court finds that plaintiffs' failure to demonstrate a strong likelihood of success on the merits is the most important consideration in resolving the motion for a preliminary injunction.  See <u>Gonzales</u>, 225 F.3d at 625; <u>Jones</u>, 569 F.3d at 277.  In light of that finding, the court does not believe that plaintiffs will suffer irreparable injury absent an injunction.  Plaintiffs are able to expend retained funds, and in early August 2015, plaintiff may contribute and expend her own funds to support her campaign.  The issuance of an injunction would upset the fundraising system Ohio has implemented for judicial elections and would risk eroding public confidence in the independence of the judiciary.

Accordingly, plaintiffs' motion for a preliminary injunction (doc. 2) is DENIED.

s/ James L. Graham<br>
JAMES L. GRAHAM<br>
United States District Judge

DATE: June 3, 2015