# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **COLLEEN M. O'TOOLE, et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **MAUREEN O'CONNOR, et al.**, <br><br> Defendants. | Case No. 2:15-cv-1446 <br><br> **Judge Graham** <br><br> **Magistrate Judge Deavers** |

## OPINION & ORDER

Under the Ohio Code of Judicial Conduct, incumbent judges running for re-election can call themselves judges. Other sitting judges seeking election to a different bench cannot. Since this is an unconstitutional restraint on free speech, the Court will grant summary judgment to Plaintiffs.

This matter is before the Court on the parties' cross-motions for summary judgment, (Docs. 43[1], 44), and Plaintiffs' Motion for Reconsideration, (Doc. 42), of this Court's Opinion and Order that granted in all parts but one Defendants' Motion for Judgment on the Pleadings, (Op. & Order, Doc. 41). The Court will **DENY** Plaintiffs' Motion for Reconsideration. The Court will **GRANT** summary judgment to Plaintiffs on their as-applied challenge; the Court will **GRANT** summary judgment to Defendants on Plaintiffs' facial challenge.

## I) Factual Background

After ruling on a motion for preliminary injunction and a motion for judgment on the pleadings, this matter is back before the Court, and the facts are essentially the same as before. Ohio's citizens elect their judges, Ohio has established rules governing how judicial candidates may conduct their campaigns, and Plaintiffs challenged several of those rules.

Three plaintiffs bring claims. One: Colleen M. O'Toole, who currently presides as a judge on Ohio's Eleventh District Court of Appeals. O'Toole is a candidate for

---

[1] Plaintiffs style their motion as a "Motion for Judgment on the Pleadings or, Alternatively, for Summary Judgment With Respect to Rule 4.3(C)." (Doc. 43).

election to the Ohio Supreme Court. Two: Friends to Elect Colleen M. O'Toole ("the Committee"), a campaign committee that registered with the Ohio Secretary of State to receive contributions and make expenditures on behalf of O'Toole in her campaigns for judicial office. Three: Gary Broska, a would-be contributor to O'Toole's campaign fund.

Plaintiffs sue three defendants: (1) Maureen O'Connor, Chief Justice of the Ohio Supreme Court; (2) Scott J. Drexel, disciplinary counsel of the Ohio Supreme Court; and (3) Richard A. Dove, Secretary to the Board of Commissioners on Grievances and Discipline of the Ohio Supreme Court. (Am. Compl. at ¶¶ 10–12). Plaintiffs allege Defendants adopted, promulgated, and have enforced or threaten to enforce certain unconstitutional provisions of the Ohio Code of Judicial Conduct. (Am. Compl. at ¶ 14).

(Op. & Order at 1–2).

Plaintiffs challenged various provisions of the Ohio Code of Judicial Conduct. Defendants moved for judgment on the pleadings. (Doc. 27). The Court granted Defendants' motion on all but one of Plaintiffs' claims. (Doc. 41). Plaintiffs ask the Court to reconsider its order and ask for judgment in their favor on the one outstanding claim. Defendants also ask for judgment on the one outstanding claim.

The one outstanding claim is this: Rule 4.3(C) of the Ohio Code of Judicial Conduct violates Plaintiffs' freedom of speech. Rule 4.3 says, "[A] *judicial candidate* . . . shall not *knowingly* or with reckless disregard . . . (C) Use the title of a public office or position immediately preceding or following the name of the *judicial* candidate, when the judicial candidate does not hold that office or position . . . ." Ohio Jud. Cond. Rule 4.3 (emphasis in original denotes a term defined in the Ohio Code of Judicial Conduct). The Ohio Code of Judicial Conduct also includes comments to the rules. In this case, the pivotal comment says, "A sitting judge, who is a judicial candidate for a judicial office other than the court on which he or she currently serves, violates Rule 4.3(C) if he or she uses the title 'judge' without identifying the court on which the judge currently serves." Ohio Jud. Cond. Rule 4.3(C), cmt. [2].

In ruling on Defendants' Motion for Judgment on the Pleadings, the Court held that Rule 4.3(C), when interpreted in light of Comment [2], prohibits true speech. And since the First Amendment protects almost all true speech in campaign communications, the rule likely fails to pass strict scrutiny. But, the Court refused to enter judgment for Plaintiffs sua sponte.

## II) Discussion

Before moving to the analysis of Rule 4.3(C), the Court discusses Plaintiffs' Motion for Reconsideration.

### A) The Court Will Deny Plaintiffs' Motion for Reconsideration

The Court granted Defendants' Motion for Judgment on the Pleadings on all but one of Plaintiffs' claims. (Op. & Order at 31). Plaintiffs ask the Court to reconsider its entire ruling based on "two fundamental overarching principles." (Pls.' Mot. Recons. & Mot. J. on the Pleadings/Summ. J. at 3, Doc. 42). One: the alleged violation here is of a constitutional right, not just any right. Two: "those who govern should be the *last* people to help decide who *should* govern." (*Id.* (quoting *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1441–42 (2014))). Plaintiffs also present arguments specific to one of the Court's rulings: that the fundraising window created by Rule 4.4(E) is constitutional. Defendants argue that Plaintiffs motion is improper because federal courts don't recognize a motion for reconsideration, and if the Court construed Plaintiffs' motion as one brought under Federal Rules of Civil Procedure 59(e) or 60(b), the motion would be improper. The Court considers the arguments in the following order: (1) whether the Court can entertain Plaintiffs' motion, (2) Plaintiffs' broad arguments regarding an elected judiciary, and (3) their specific arguments regarding Rule 4.4(E).

First, can the Court reconsider its earlier ruling, and if so, what standards govern such reconsideration? In short, yes, the Court may reconsider its earlier ruling.

> When an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). The second sentence of Rule 54(b) describes this Court's August 18, 2016 Opinion & Order—a decision that adjudicated fewer than all the claims presented.

Defendants analyze Plaintiffs' motion under Federal Rules of Civil Procedure 59 and 60, but analyzing Plaintiffs' motion under these rules would only be proper if the Court had issued a judgment. *See* Fed. R. Civ. P. 59(e) (Motion to Alter or Amend a Judgment); Fed. R. Civ. P. 60 (contemplating a motion for relief from a final judgment, order, or proceeding to be filed, but "the motion does not affect the judgment's finality or suspend its operation."). Since the Court

3

has not yet entered a judgment but has issued an order that adjudicated fewer than all the claims in this case, the Court may revise its orders at any time before it enters a judgment adjudicating all the claims and all the parties' rights and liabilities. *See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 946 (6th Cir. 2004) (holding that district court had power under Rule 54 to reconsider its order sua sponte because it was an interlocutory order). Since Plaintiffs' motion asks the Court to revise just such an order, the Court will entertain Plaintiffs' motion.

Now to the second issue—Plaintiffs argue that judicial elections suffice to promote Ohio's interest in a fair and impartial judiciary; therefore, any additional restraint of free speech wouldn't pass strict scrutiny. Much of Plaintiffs' motion is spent reviewing the history and wisdom of judicial elections. (Pls.' Mot. Recons. at 3–11). And while Ohio may have a compelling interest in public confidence in judicial integrity, impartiality, and independence, Plaintiffs conclude, "[t]he people of the State of Ohio, in their infinite wisdom, put in place a mechanism that actually and empirically advances such interest but is significantly less intrusive on First Amendment rights." (*Id.* at 11). That mechanism is the judicial election. Plaintiffs argue that by electing its judges, Ohio holds them accountable, which in turn means Ohio has already achieved the "compelling interest of public confidence in . . . judicial integrity, impartiality and independence." (*Id.*). Thus, any additional regulation would not be as narrowly tailored to achieve the compelling interest at stake, which means any regulation beyond permitting judicial elections would fail strict scrutiny.

Plaintiffs' argument has problems, not the least of which is a Supreme Court opinion. States may adopt narrowly tailored restrictions on the speech of judicial candidates. *See Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1673 (2015). And a state's decision to elect its judges "does not compel it to compromise public confidence in their integrity." *Id.* In short, the Constitution permits states to do more than merely elect their judges.

Finally, Plaintiffs argue that the Court should reconsider its ruling on their challenge to Rule 4.4(E). Plaintiffs argue that they could, if given the chance, produce facts that would prove false the foundational premise of the Sixth Circuit's opinion on this issue, an opinion on which the Court relied in its ruling. Specifically, Plaintiffs argue that the Sixth Circuit's opinion was based on the incorrect premise that Plaintiffs had a 16-month window in which to solicit and receive funds when in fact that window was only four months. Plaintiffs argue that as a practical matter early voting shrinks this window even further. Plaintiffs argue they should be entitled to

develop an evidentiary record to demonstrate that the four-month window is "so severe that in the circumstances its particular limits violate the First Amendment." *Randall v. Sorrell*, 548 U.S. 230, 246 (2006).

The Ohio Code of Judicial Conduct contemplates a sixteen-month fundraising window for the general election: twelve months before the election and four months after. But since the primary elections come eight months before the general election, that leaves a campaign committee only four months to solicit, receive, and spend funds before a contested primary election. Plaintiffs argue that the four-month window undercuts the Sixth Circuit and this Court's reasoning because the Sixth Circuit only mentioned the sixteen-month fundraising window in its decision affirming this Court's denial of Plaintiffs' Motion for Preliminary Injunction. *See O'Toole v. O'Connor*, 802 F.3d 783, 790 (6th Cir. 2015). But the Sixth Circuit noted that the fundraising window selected by Ohio "may appear arbitrary, it is exactly this type of line-drawing that the Supreme Court sought to avoid 'wad[ing] into' in explaining that narrow tailoring does not mean 'perfect' tailoring." *Id.* at 791 (citing *Williams-Yulee*, 135 S. Ct. at 1671). The court noted that Rule 4.4(E) "prohibits the solicitation and receipt of funds only during the period of time that most implicates the government's stated interests." *Id.* at 790. And judicial candidates may participate in a host of other activities; they may "contribute and spend their own funds, marshal volunteers and supporters and engage in campaign activities other than soliciting funds, such as attending political functions, marching in parades and making speeches about their candidacy." *Id.* (quoting Op. & Order Denying Pls.' Mot. Prelim. Inj. at 9, Doc. 15).

The Court won't redraw the line Ohio has selected. The Sixth Circuit's reasoning, specifically its application of *Williams-Yulee*, applies to Rule 4.4(E) regardless of whether a judicial candidate has sixteen months to fundraise for general election or four months to fundraise for a contested primary election. Because Plaintiffs present no reason for the Court to depart from its or the Sixth Circuit's reasoning, the Court denies Plaintiffs' Motion for Reconsideration.

**B) Cross-Motions for Summary Judgment on Rule 4.3(C)**

Both parties move for summary judgment on Plaintiffs' claim that Rule 4.3(C) violates their right to free speech. Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The constitutionality of a state statute is a question of law," appropriate for determination by summary judgment. *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 431 (6th Cir. 2008).

5

Rule 4.3 states:

> During the course of any campaign for nomination or election to judicial office, a *judicial candidate*, by means of campaign materials, including sample ballots, advertisements on radio or television or in a newspaper or periodical, electronic communications, a public speech, press release, or otherwise, shall not *knowingly* or with reckless disregard do any of the following:
>
> ….
>
> (C) Use the title of a public office or position immediately preceding or following the name of the *judicial* candidate, when the judicial candidate does not hold that office or position[.]

Ohio Jud. Cond. Rule 4.3.

Comment [2] to Rule 4.3(C) states: "A sitting judge, who is a judicial candidate for a judicial office other than the court on which he or she currently serves, violates Rule 4.3(C) if he or she uses the title 'judge' without identifying the court on which the judge currently serves." Ohio Jud. Cond. Rule 4.3(C), cmt. [2].

Plaintiffs pleaded several examples of speech that they allege fall within the prohibition of Rule 4.3(C) as interpreted by Comment [2]

> Judge Colleen O'Toole
> Ohio Supreme Court
>
> O'Toole
> Justice
> Ohio Supreme Court
>
> O'Toole
> Ohio Supreme Court
> Justice
>
> Justice
> O'Toole
> Ohio Supreme Court
>
> Judge O'Toole
> to the Ohio Supreme Court
>
> Elect Judge O'Toole
> to the Ohio Supreme Court
>
> Judge O'Toole
> for the Ohio Supreme Court

(Am. Compl. at ¶ 127, Doc. 24).

The Court's not starting from scratch with its analysis of Rule 4.3(C)'s application to the campaign speech pleaded by Plaintiffs. Here's what the Court ruled in denying Defendants' Motion for Judgment on the Pleadings with respect to Rule 4.3(C): (1) "Rule 4.3(C) prohibits false speech, true-but-misleading speech, and speech that is not even misleading; it does not, however, compel speech," (Op. & Order at 17); (2) of Plaintiffs' seven examples of speech restricted by Rule 4.3(C), the first four of the examples were false speech prohibited by Rule 4.3(C), and to this extent, the rule was "narrowly tailored to promote Ohio's interest in the appearance and reality of an impartial and fair judiciary," (*id.* at 19); (3) but the final three examples were "not clearly false, and perhaps not even misleading," (*id.* at 20); (4) Comment [2] to Rule 4.3 prohibits the examples of true speech alleged by Plaintiffs, (*id.* at 20–21); (5) Comment [2] "signifies that the rule in question, properly understood, is obligatory as to the conduct at issue," (*id.* at 21 (quoting Ohio Jud. Cond. Rules, Scope [3])); and therefore (6) "Rule 4.3(C) as interpreted by Comment two fails strict scrutiny because it suppresses true speech, and the government's interest in maintaining high ethical standards for its judges is not advanced by suppressing true speech in election campaigning," (*id.* at 22).

Plaintiffs argue that the only question that remains after this Court's earlier opinion is whether Rule 4.3(C) should be enjoined facially or as-applied. Plaintiffs argue that it should be facially invalidated. (Pls.' Mot. J. Pleadings at 7, Doc. 43).

Defendants filed their own motion for judgment on Plaintiffs' Rule 4.3(C) claim, this time a motion for summary judgment. (Doc. 44). Defendants argue that since the Court found that three of Plaintiffs' examples of speech are true, and Rule 4.3(C) doesn't prohibit true speech, Rule 4.3(C) is constitutional. Furthermore, since the whole argument hangs on the importance of Comment [2], Defendants argue that the plain language of Rule 4.3(C), Supreme Court of Ohio precedent, the amendment history to Rule 4.3, principles of comity and federalism, and the self-limiting nature of the comments all favor upholding the rule. The only way that Rule 4.3(C) is overbroad is by "engrafting the non-binding language of Comment [2] onto the Rule." (Defs.' Reply at 15, Doc. 52). Defendants argue that "engrafting the Comment onto the Rule violates every prudential rule of construction, as well as Sixth Circuit precedent." (*Id.*). Defendants argue both that the comment is not binding on a candidate and that even if it were, it should be ignored by the Court. (Defs.' Cross-Mot. Summ. J. at 16) ("Rule 4.3(C) must be read on its own."). Essentially, Defendants ask the Court to ignore Comment [2].

Plaintiffs respond by pointing to Defendants' previous argument. In the briefing on their Motion for Judgment on the Pleadings, Defendants argued that all of Plaintiffs' examples of speech constituted false speech that "fall squarely within the prohibitions of the Rule." (Defs.' Mot. J. on the Pleadings at 26). Indeed, Defendants' original argument was in large part premised on this construction of Rule 4.3(C) and Comment [2]. (*See id.* at 29–30). Discussing the three examples of what the Court found to be true speech, Defendants argued that, "[a]pplying the Rule and the Comment to the Plaintiffs' examples converts them from false speech (that Judge O'Toole *is* a Judge or Justice on the Supreme Court of Ohio) into a true statement (that Judge O'Toole is a Judge on the Eleventh District Court of Appeals who is running for the Ohio Supreme Court)." (*Id.* at 30). So while Defendants once argued that Rule 4.3(C) prohibited all of Plaintiffs' seven examples of speech, now Defendants argue that Rule 4.3(C) does not prohibit the final three examples the Court found to be true speech.

To their credit, Defendants did argue in their Motion for Judgment on the Pleadings that if the Court sensed a tension between the comments and the rules, the rules were the only enforceable part of the Ohio Code of Judicial Conduct and the Court could find that "the text of Rule 4.3(C) comports with the Constitution—even if the comment does not." (*Id.* at 31).

And this is essentially the conclusion of the Court: Comment [2] does not comport with the First Amendment, but the plain text of Rule 4.3(C) does. So what's the Court to do?

Plaintiffs still want a judgment. They altered their speech because of the language of Comment [2] and Defendants' previous statements in their Motion for Judgment on the Pleadings indicating that O'Toole would violate the Code of Judicial Conduct if she made such statements. (Second O'Toole Decl. at ¶¶ 9–11, Doc. 43-1). Plaintiffs say they need a judgment to right "[a]n injury and constitutional wrong [that] has clearly occurred" and an injunction to protect them from the threat of future enforcement. (Pls.' Mem. Resp. to Defs.' Mot. Summ. J. at 10, Doc. 49). Because Comment [2] is explicit in its application, because of the clear and important role the comments play in the Code, and because Plaintiffs reasonably relied on both the plain language of Comment [2] and Defendants' representations throughout this litigation, the Court will grant judgment to Plaintiffs on the constitutionality of Rule 4.3(C), as applied to this case. Here's why.

Comment [2] provides an example of conduct that Rule 4.3(C) prohibits, specifically that a judicial candidate "violates Rule 4.3(C) if he or she uses the title 'judge' without identifying

the court on which the judge currently serves." Ohio Jud. Cond. Rule 4.3(C), cmt. [2]. O'Toole wants to do exactly what Comment [2] prohibits: calling herself a judge without identifying the Court on which she serves. So if Judge O'Toole calls herself a judge, and just a judge, what happens?

"[A] judge may be disciplined only for violating a rule." Ohio Jud. Cond. Rules, Scope [2]. Comments are not rules. But the comments do serve important functions in the Code. "First, they provide guidance regarding the purpose, meaning, and proper application of the rules. They contain explanatory material and, in some instances, provide examples of permitted or prohibited conduct." Ohio Jud. Cond. Rules, Scope [3]. Comment [2] serves this first function: it provides an example of conduct prohibited by Rule 4.3(C). So per the Code, Rule 4.3(C) must be read to prohibit the statements alleged by Plaintiffs. Therefore, O'Toole could be disciplined for making the three truthful statements she pleaded. (*See* Am. Compl. at ¶ 127). The Court can't ignore Comment [2] because O'Toole couldn't ignore it.

Defendants argue that this reading grafts Comment [2] onto the Rule 4.3(C), which is improper under the Code. The Code says, "Comments neither add to nor subtract from the binding obligations set forth in the rules. Therefore, when a comment contains the term 'must,' it does not mean that the comment itself is binding or enforceable; it signifies that the rule in question, properly understood, is obligatory as to the conduct at issue." Ohio Jud. Cond. Rules, Scope [3]. Defendants argue that "the conduct at issue" is the conduct described in the rule, not the comment. The Court disagrees. The Court reads the language in Scope [3] to mean that the rule, properly understood, is obligatory to the conduct at issue *in the comment*. To read it as Defendants' do would be to make nonsense of Scope [3]. Properly understood, Rule 4.3(C) prohibits the conduct at issue in Comment [2]. This reading does not add to the rules.

Defendants present a number of other arguments why the Court should ignore Comment [2]. Defendants quote the Code for the proposition that "[o]nly 'the black letter of the rules is binding and enforceable.'" (Defs.' Mot. Summ. J. at 5, 14, 15). But the Code doesn't say "only," and this statement is in the context of a paragraph about the discipline that can result from violations. When determining the appropriateness of disciplinary action, the Code permits consideration of factors other than just the black letter of the rules. *See* Ohio Jud. Cond. Rules, Scope [6]. Also, comments that give examples of prohibited conduct aren't read on their own; they provide guidance on the proper application of the rules. *See* Ohio Jud. Cond. Rules, Scope [3].

Defendants also argue that the Supreme Court of Ohio and this Court explicitly subordinate the comments to the rules. *See In re Disqualification of Serrott*, 134 Ohio St. 3d 1245, 2012-Ohio-6340, 984 N.E.2d 14, ¶ 14 ("[T]he comments cannot prevail over the rule itself."); *Wasmer v. Ohio Dep't of Rehab. & Corr.*, No. 2:05-CV-0986, 2007 WL 593564, at *2 (S.D. Ohio Feb. 21, 2007) (finding comments to be "persuasive if not authoritative").

In *Serrott*, the Supreme Court of Ohio held that nothing in the rule at issue, Rule 2.11, compelled disqualifying a judge where "the judge previously represented a party's lawyer in an unrelated matter." 134 Ohio St. 3d 1245 at ¶ 14. Rule 2.11 "requires a judge to step aside from a case if the judge 'served as a lawyer in the matter in controversy.'" *Id.* (quoting Ohio Code of Jud. Cond.). "Comment 5 state[d] that '[a] judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, *even if the judge believes there is no basis for disqualification*.'" *Id.* Counsel for the defendants in *Serrott* argued that the Code of Judicial Conduct required the judge to be disqualified because "the judge's failure to disclose his prior professional relationship with plaintiffs' counsel creates an appearance of impropriety." *Id.* at ¶ 8. But the Supreme Court of Ohio held that "once the judge recalled that he had represented plaintiffs' counsel, he should have disclosed this information to the parties. But contrary to Hahn's assertion, the judge's disqualification is not mandated for failing to disclose this information." *Id.* at ¶¶ 13–14.

In *Serrott*, the relevant comment, Comment 5, mentioned no requirements but instead spoke in the permissive term, "should." Careful students of the Code know that "should" implicates another of the Scope paragraphs: Scope [2]. It says, "Where a rule contains a permissive term, such as 'may' or 'should,' the conduct being addressed is committed to the personal and professional discretion of the judge or candidate in question, and no disciplinary action should be taken for action or inaction within the bounds of such discretion." Ohio Jud. Cond. Rules, Scope [2]. In *Serrott* the Court found that the rule and the comment didn't mandate the relief sought—disqualification of the trial court judge. *Id.* at ¶ 14.

Here, Comment [2] prohibits certain speech by a judicial candidate. And Comment [2] speaks explicitly about a violation of the rule; it does not leave the matter up to the judicial candidate's discretion. This is quite unlike *Serrott*, where nothing in the rules required the relief sought. In short, *Serrott* doesn't require the Court to ignore Comment [2].

In *Wasmer*, this Court noted "some question about the binding nature of Comment [7]." *Wasmer*, 2007 WL 593564, at *2. It noted that courts elsewhere "have concluded that it is the text of the rule itself rather than the comment which controls." *Id.* The *Wasmer* court did not, however, discuss the scope provisions of the Code, which themselves outline the impact of the comments. Nor did the Court ignore the comment completely. Instead, it deemed the comment "persuasive if not authoritative of the issue." *Id.* The Court agrees with the reasoning in *Wasmer* and uses the comments as a guide to the interpretation of the rules, just as the Code requires.

Defendants also argue that the Supreme Court of Ohio precedent and the amendment history of the Code make clear that Rule 4.3 regulates only false speech. Defendants argue that this shows the limited—and constitutional—scope of Rule 4.3(C). In a decision analyzing a former version of Rule 4.3(C), the Supreme Court of Ohio held that the rule "does not address misleading speech, only the use of a judicial position that the candidate currently does not have." *O'Neill v. Crawford*, 132 Ohio St. 3d 1472, 2012-Ohio-3223, 970 N.E.2d 973 (table decision by a thirteen-judge commission appointed by the Chief Justice of the Courts of Appeals Association). That same commission concluded that the now-superseded version of Rule 4.3(C) was unconstitutional as applied to the respondent but not on its face. *Id.*

The old version of Rule 4.3(C) that the *O'Neill* commission analyzed prohibited judicial candidates from using "the title of an office not currently held by a *judicial candidate* in a manner that implies that the *judicial candidate* does currently hold that office." *Id.* (quoting Ohio Jud. Cond. Rule 4.3 (2009)). Not long after *O'Neill*, the Supreme Court of Ohio amended Rule 4.3(C), eliminating the word "implies." *See* Ohio Jud. Cond. Rule 4.3 (amendment eff. Jan. 1, 2013). Defendants argue that these amendments show that the Rule applies only to false speech.

Further still, the Supreme Court of Ohio held that Rule 4.3(A) was constitutional to the extent that it regulated false speech, but unconstitutional to the extent it regulated true-but-misleading speech. *See In re Judicial Campaign Complaint Against O'Toole*, 41 Ohio St. 3d 355, 2014-Ohio-4046, 124 N.E.3d 1114, ¶¶ 41–43 (holding that Rule "4.3(A) is unconstitutional in part."). Defendants argue this is further proof that the Supreme Court of Ohio upholds prohibitions on false speech but rejects as unconstitutional language in the rules that prohibits true-but-misleading speech. Defendants argue that this shows that the rules are designed to prohibit only false speech. And since the only examples of Plaintiffs' speech at issue are true, Rule 4.3(C) doesn't prohibit that speech.

Since *Serrott*, *O'Neill*, *In re O'Toole*, and the amendments all come from the Supreme Court of Ohio, Defendants argue that this Court should defer to its interpretation of Rule 4.3 because of long ensconced principles of comity and federalism. To be sure, the interpretation of an Ohio statute by the Supreme Court of Ohio is binding on federal courts. *Johnson v. Fankell*, 520 U.S. 911, 916 (1997). But the Supreme Court of Ohio has consistently held that the First Amendment does not suffer rules that prohibit true but potentially misleading speech. *See O'Neill*, 132 Ohio St. 3d 1472. The Supreme Court of Ohio has not passed on the question of whether Comment [2] to Rule 4.3(C) prohibits true but potentially misleading speech. And nothing in *O'Neill* requires this Court to simply ignore Comment [2]. Indeed, all *O'Neill* says is that Rule 4.3(C) as applied to true but misleading speech is unconstitutional, a similar result to the one the Court reaches today. It's even plausible that it would violate principles of comity and federalism if this Court ignored Comment [2] since it prohibits exactly the type of speech the Supreme Court of Ohio said is permitted by the First Amendment.

Rule 4.3(C), in light of Comment [2], prohibits the true speech Plaintiffs pleaded. The First Amendment protects that speech, even in the unique context of judicial elections. And the Court can't ignore Comment [2]; the comments themselves describe how the rules work when properly understood. So, properly understood, Rule 4.3(C) prohibits speech that's protected by the First Amendment; therefore, as-applied to Plaintiffs' true speech, Rule 4.3(C) is unconstitutional.

Defendants argue too that the Court should apply a saving construction to save Rule 4.3(C) from unconstitutionality. The Court acknowledges this is courts' preference, *see Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 132 S. Ct. 2566, 2594 (2012) (citing *Hooper v. California*, 155 U.S. 648, 657 (1895)), but sees no way around the unambiguous Comment [2]. And Courts only need to resort to reasonable alternative constructions of a statute to save it from unconstitutionality. *Hooper*, 155 U.S. at 657 ("[E]very reasonable construction must be resorted to in order to save a statute from unconstitutionality."). There is no such reasonable alternative construction here.

The Court must also decide whether Rule 4.3(C) should be invalidated on its face or as-applied to Plaintiffs. Rule 4.3(C) cannot be facially invalidated because of all its permissible applications. "[A] statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008). "[A] statute's overbreadth [must] be *sub-*

*stantial,* not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* Here, Rule 4.3(C) prohibits false speech, which is part of its plainly legitimate sweep. *See, e.g.*, *In re O'Toole*, 141 Ohio St. 3d 355, 2014-Ohio-4046, 24 N.E.3d 1114, ¶ 41 (finding constitutional Rule 4.3(A)'s false-speech applications). Rule 4.3(C) has a plainly legitimate sweep that is broad; in contrast, the behavior proscribed by Comment [2] is narrow. Therefore, Rule 4.3(C) is not facially invalid; it is only invalid as applied to Plaintiffs.

Finally, Plaintiffs are entitled to a permanent injunction. "A party is entitled to a permanent injunction if it can establish that it suffered a constitutional violation and will suffer 'continuing irreparable injury' for which there is no adequate remedy at law." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 602 (6th Cir. 2006) (quoting *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1067 (6th Cir. 1998)). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiffs have established that they will suffer the loss of First Amendment freedoms through the enforcement of Rule 4.3(C) as interpreted by Comment [2]. Therefore, Plaintiffs are entitled to a permanent injunction enjoining Defendants from enforcing Rule 4.3(C) as interpreted by Comment [2].

**III)** **Conclusion**

Plaintiffs' Motion for Reconsideration is **DENIED**. (Doc. 42).

The parties' cross-motions for summary judgment are **GRANTED IN PART AND DENIED IN PART**. (Docs. 43, 44). The Court **GRANTS** summary judgment to Plaintiffs on their as-applied challenge to Rule 4.3(C); the Court **GRANTS** summary judgment to Defendants on Plaintiffs' facial challenge to Rule 4.3(C).

The clerk is directed to enter judgment for Defendants on all claims except Plaintiffs' as-applied Rule 4.3(C) claim, on which judgment should be entered for Plaintiffs. That judgment includes the following injunction:

Defendants and all those acting under their direction and authority may not undertake any enforcement actions or find any violations under Comment [2]'s interpretation of Rule 4.3(C) of the Ohio Code of Judicial Conduct for any conduct undertaken while this injunction is in place. (*See* Am. Compl. at 41).

IT IS SO ORDERED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: May 17, 2017